# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **STEPHEN MARCUS LITCHFIELD**, | **Case No.: 3:25-cv-02394-SI** |
| Plaintiff Pro Se, | |
| v. | **FIRST AMENDED COMPLAINT** |
| **ANGI INC.,** | DECLARATORY JUDGMENT AND |
| Defendant. | UNLAWFUL TRADE PRACTICES |
| _____ | **DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR**:

    **1. DECLARATORY JUDGMENT (28 U.S.C. § 2201)**

    **2. UNLAWFUL TRADE PRACTICES  (ORS 646.608)**

## I. INTRODUCTION

1. This action arises from a systemic architecture of digital deception employed by Defendant Angi Inc. ("Angi"). Plaintiff brings this action to seek redress for systemic deceptive practices employed by Defendant.

2. Plaintiff alleges that Defendant employs deceptive interface designs ("Dark Patterns") to (a) funnel users into unintended purported new contracts, (b) obstruct the cancellation of services, and (c) force retention of sensitive financial data against the consumer's will.

3. Defendant's conduct demonstrates bad faith. On November 4, Defendant threatened defamation litigation for alleging non-compliance, while simultaneously admitting compliance was not completed before that date.

4. Plaintiff seeks a declaratory judgment that no valid contract (or arbitration agreement) was formed due to a lack of mutual assent regarding the essential nature of the transaction, injunctive relief to dismantle these deceptive architectures, and punitive damages for Defendant's willful violation of consumer protection laws.

5. Plaintiff brings this action not for personal redress, but to preserve evidence of systemic securities and consumer protection violations currently under review by the SEC (TCR #17658-243-256-826) and FTC (193806821). This filing serves as a formal litigation hold on all source code, server logs, and internal communications regarding the "Log In" funnel.

## II. JURISDICTION AND VENUE

6. **Subject Matter Jurisdiction**: This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) (Diversity Jurisdiction).

a. **Diversity**: Plaintiff is a citizen of Oregon. Defendant is a Delaware corporation with its principal place of business in Colorado.

b. **Amount in Controversy**: The cost to Defendant of complying with the requested injunctive relief exceeds $75,000. The injunction seeks a fundamental re-architecture of Defendant's Payment Method Administration functionality, as well as a reconsideration of the Login Process. Because Defendant's platform architecture does not currently support a "Delete Payment" function for at least some users (as evidenced by the hard-coded restriction), and because the "Log In" process is capable of registering users without manifesting mutual assent, complying with an injunction to provide these functions would require:

   i. **Software Engineering:** Developing, testing, deploying, and operating new user interface logic, API endpoint modifications, and backend service logic to support functionality allowing users to remove their own payment method, as well as implementing a redesigned login and registration process that provides conspicuous notice of the essential nature of the activity and manifests mutual assent for any agreements formed.

   ii. **Database Schema Migration**: Altering data structures and database schemas to remove dependencies that may currently prevent deletion of Payment Method information, or to extensions

to the Login and Registration system functionality to differentiate or distinguish the "Log In" from the "Sign Up" processes.

iii.   **Compliance Auditing**: Updating internal compliance protocols to support payment method deletion and ensuring compliance with user acquisition metrics reported from "Log In" and "Sign Up" processes.

c.   Under the "Either Viewpoint" rule (In *re Ford Motor Co./Citibank*), because the software architecture is systemic, Defendant cannot re-architect the code solely for one user without altering the platform itself. The cost of this systemic engineering project is indivisible and exceeds $75,000.

7.   **Personal Jurisdiction**: This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in Oregon, targets Oregon consumers with digital advertisements, and the tortious acts alleged herein (Unlawful Trade Practices) caused injury to Plaintiff within this District.

8.   **Venue**: The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, where Plaintiff accessed Defendant's platform and suffered the alleged harm.

### III. PARTIES

9. **Plaintiff**: Stephen Marcus Litchfield is an individual residing in Clackamas County, Oregon.

    a. Plaintiff is a career Software Architect and Staff Engineer, utilizing his professional background to conduct independent forensic analysis of Defendant's public-facing platform.

    b. Plaintiff has no employment history with Defendant and brings this action as an external whistleblower and consumer.

    c. **Disclosure of Financial Interest**: Plaintiff holds a bearish financial position in Angi Inc. (put options/short shares). This position was established after Plaintiff discovered the deceptive practices alleged herein. Plaintiff discloses this interest now to:

        i. Maintain full candor with the Court regarding potential conflicts; and

        ii. Provide the basis for Plaintiff's forthcoming request for a Special Master, as Plaintiff acknowledges his financial interest precludes him from personally viewing Defendant's proprietary trade secrets during discovery.

10. **Defendant**: Angi Inc. (d/b/a HomeAdvisor, Angi, Handy) is a publicly traded corporation (NASDAQ: ANGI) headquartered at 3601 Walnut Street, Suite 700, Denver, Colorado.

    a.  Defendant owns and operates the domain Angi.com.

    b.  Defendant owns and operates the domain HomeAdvisor.com under the Angi brand.

    c.  Defendant owns and operates the domain AngiesList.com, which redirects to Angi.com.

## IV. FACTUAL ALLEGATIONS

## A. The Deceptive Registration Funnel (Lack of Mutual Assent)

11. On September 10, 2025, Plaintiff visited HomeAdvisor.com to investigate an unauthorized charge of $29.99 (*Exhibit A, Fig 9.10.1: Transaction Notification*).

12. Plaintiff, uncertain whether the household account was registered under his email or his spouse's, selected "Log In" to authenticate. Plaintiff relied on standard industry protocols wherein a login attempt with a non-existent email returns an error ("Account Not Found"). Plaintiff intended to verify the existence of an account, not to create a new legal relationship.

13. Defendant system displayed the message "Welcome Back!", which characterized the current action as one in which an account might exist that could be returned to. Defendant system again displayed the "Welcome Back" message after the successful conclusion of the "Log In" action, which carried the effect of solidifying

the belief that Plaintiff was returning to an account that had already existed. (*Exhibit C, Recording N: Narrated Registration Funnel*).

14. Defendant's interface presented two distinct, mutually exclusive paths: "Log In" and "Sign Up." (*Exhibit A, Fig 9.10.9: Login Interface Choice*). By bifurcating these options, Defendant affirmatively represented that the "Log In" path was solely for authentication. The presence of the explicit "Sign Up" link served as a negative confirmation to the user that the path they were currently navigating did not involve contract origination.

15. Immediately upon submission of the email address, Defendant's system sent an automated email with the subject line "Log in with this 6-digit code to continue." (*Exhibit A, Fig 9.10.11: Deceptive Verification Email*). In standard digital identity architecture, the generation of a verification code constitutes a confirmation that a user record exists. Defendant's system generated a "Verification Code" for a non-existent user record. In digital identity architecture, this constitutes a "False Positive" system state. By failing to return a standard "Account Not Found" error, the system affirmatively deceived the Plaintiff into believing the email address was valid and recognized, thereby inducing the Plaintiff to proceed under the belief he was authenticating an existing relationship.

16. The system prompted Plaintiff to "Complete your account." (*Exhibit A, Fig 9.10.13: "Complete Your Account" Prompt*). Relying on the verification code's confirmation of his account's existence, Plaintiff reasonably understood this

prompt to be a request to update missing metadata on an existing profile (e.g., adding a first/last name to a record previously containing only payment details). Plaintiff did not understand this to be the creation of a new profile, but rather the administrative maintenance of an existing one.

17. In the specific context of the September 10, 2025 transaction, Plaintiff reviewed the Terms & Conditions and clicked "Accept" with the understanding that he was accepting a legal agreement governing his existing account. Plaintiff's assent was contextualized entirely by Defendant's misrepresentation that he was updating an existing profile. At that time, Plaintiff manifested assent to modifying an existing legal relationship; Plaintiff did not manifest assent to the origination of a new legal relationship or the creation of a new account. Because the system secretly substituted a new contract (the "Shell Account") for the one Plaintiff reasonably believed he was managing, there was no meeting of the minds regarding the essential nature of that specific transaction.

18. This representation was false. The system was, in fact, initiating a new registration event. Although Plaintiff reviewed and accepted the presented Terms & Conditions, his assent was obtained through misrepresentation of the essential nature of the transaction. Plaintiff manifested assent to updating the terms of an existing account relationship based on Defendant's "Welcome Back!" representation (*Exhibit A, Fig 9.10.10: "Welcome Back" Banner*) and the authentication of an emailed 6-digit code; he did not manifest assent to the creation of a new contractual relationship or account.

19. Defendant's design constitutes "Interface Interference" under *Berman v. Freedom Fin. Network*. The interface presented two distinct, mutually exclusive paths: "Sign Up" (Contract Formation) and "Log In" (Authentication). By making the "Sign Up" link conspicuous, Defendant created a negative confirmation structure: the presence of a specific path for new accounts affirmed to the reasonable user that the "Log In" path was exclusively for existing accounts.

20. When Plaintiff selected "Log In," he affirmatively rejected the path of contract formation. The subsequent screen, which displayed the "Welcome Back!" banner and prompted the user to "verify" and "complete" the account, constituted "Interface Interference" under *Berman v. Freedom Fin. Network*. These design elements actively misrepresented the transaction as the administrative maintenance of an existing record, thereby overriding and rendering inconspicuous any fine-print disclosures regarding the creation of a new legal relationship. Plaintiff cannot be held to have assented to a contract he actively sought to avoid by selecting the alternative path.

21. Consequently, the arbitration clause contained in the Terms & Conditions *is void ab initio* due to a lack of mutual assent. Plaintiff never manifested assent to the formation of a new contract because the essential nature of the transaction was misrepresented. Plaintiff's acceptance was based on the reasonable belief that he was maintaining an existing account relationship, precluding the meeting of the minds necessary to establish a new legal relationship.

22. **Causal Nexus of Violations**: The Defendant's deceptive "Log In" funnel (Count I) was the direct and proximate cause of the injury alleged in Count II (Forced Data Retention). By deceptively routing Plaintiff into a new, empty account (marclitchfield@gmail.com) structure on September 10, 2025, Defendant actively obstructed Plaintiff's attempt to access the existing account (tenamyw@gmail.com) for the express purpose of cancelling services and removing payment data. The two violations are factually inseparable: the Deceptive Interface (Count I) was the instrumentality used to perpetuate the Unfair Trade Practice (Count II).

23. **Forensic Replication**: Subsequent to the September 10 event, Plaintiff utilized this same "Log In" mechanism to generate additional test accounts (using virtual email aliases) solely for the purpose of forensic investigation and evidence preservation as reported to the SEC and FTC. These subsequent investigative acts confirm that the deceptive architecture is systemic and reproducible (*Exhibit C, Recording X: Eve of Filing Verification*); however, they do not retroactively cure the lack of assent in the original September 10 transaction which obstructed Plaintiff's cancellation.

## B. Obstructive Cancellation Mechanisms and Forced Data Retention

24. Defendant has implemented obstructive cancellation mechanisms:

a. Cancellation instructions were buried deep within FAQ pages (*Exhibit A, Fig 9.15.3: Buried Cancellation Instructions; Exhibit C, Recording E: FAQ Cancellation Maze*).

b. The official support line (1-888-811-2644) automatically disconnected Plaintiff's calls five times on September 10, 2025. (*Exhibit A, Fig 9.10.6: Call Log Disconnections*).

25. After successfully cancelling the service via alternative means, Plaintiff attempted to remove his payment method (Debit Card ending in 2667) from Defendant's system. As documented in Plaintiff's forensic video evidence (*Exhibit C, Recording I: Forced Data Retention Demo*), Defendant's user interface strictly prohibits data deletion. A user may only replace a card with another valid card; there is no option to delete it.

26. Defendant forcibly retains consumer financial data after the express termination of the business relationship and Plaintiff's explicit revocation of consent, by providing no technical mechanism for removal. This architecture compels a continued data relationship against the consumer's will.

## C. Inaccurate Representations of Compliance and Contradictory Legal Demands

27. On October 16, 2025, Plaintiff served a "Formal Demand for Data Deletion" on Defendant's Chief Legal Officer.

28. **Affirmative Misrepresentation of Compliance:** On October 28, 2025, Defendant's agents communicated that the data deletion request was "resolved" (Ticket INC-2549943) (*Exhibit A, Fig 10.28.2: False 'Resolved' Ticket Status*). This communication was an affirmative representation that the sensitive financial data had been removed. However, forensic evidence (*Exhibit C, Recording P: Verification of False Compliance Assertion*) confirms this statement was materially false, as the data remained active and retrievable in Defendant's system as of October 31, 2025.

29. **Legal Threat and Contradiction**: On November 4, 2025, Defendant's Sr. Corporate Counsel issued a letter (*Exhibit B*) that:

> (a) Threatened legal action against Plaintiff for making "false" statements about the non-deletion
> AND

> (b) Admitted in the same paragraph: "We have now completed the deletion." (*Exhibit A, Fig 11.4.3: Counsel's Admission*)

30. This admission proves that Defendant's earlier assertion of "resolved" status was deceptive. The contradictory nature of threatening defamation litigation for

alleging non-compliance while simultaneously admitting compliance was incomplete provides evidence of willful misconduct. (*Exhibit A, Fig 11.4.3: Retaliatory Legal Threat*).

31. **Risk of Recurrence and Inefficacy of Voluntary Cessation**: Plaintiff anticipates Defendant may attempt to moot this action by asserting that it has individually deleted Plaintiff's data or modified the interface for his specific account. However, under the "Voluntary Cessation" doctrine (*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*), such unilateral actions do not moot the claim because:

    a. **History of False Compliance**: As documented in Exhibit C, Recording P, Defendant previously asserted on October 28, 2025, that the data deletion request was "Resolved," while forensic evidence proves the data remained active. This demonstrates that Defendant's voluntary assertions of compliance are unreliable.

    b. **Systemic Architecture**: The defects alleged (the "Log In" funnel and the hard-coded inability to delete payment methods) are embedded in the systemic architecture of the platform. Unless Defendant fundamentally re-architects its codebase as requested in the Prayer for Relief, the wrongful behavior is capable of repetition and continues to harm the Oregon public.

## V. CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT (28 U.S.C. § 2201) (No Valid Contract Formed)

32. Plaintiff incorporates the foregoing allegations.

33. An actual and justiciable controversy exists regarding whether a valid contract (and any arbitration agreement therein) was formed on September 10, 2025.

34. **Lack of Mutual Assent**: No valid contract was formed because the parties attached materially different meanings to their manifestations of assent (Restatement (Second) of Contracts § 20).

   a. **Plaintiff's Meaning**: By clicking "Log In" and entering the verification code, Plaintiff attached the meaning of authentication (accessing an existing account relationship) to his conduct.

   b. **Defendant's Meaning:** Defendant attached the meaning of formation (creating a new contractual relationship) to the same conduct.

   c. **Defendant's Knowledge**: Defendant knew or had reason to know the meaning attached by Plaintiff. Defendant affirmatively solicited the specific conduct of "Logging In" by designing, developing, deploying, and operating a software system that

    i.    provided a button labeled "Log In" to initiate the conduct;

    ii.    offered an off-ramp to an alternative "Sign Up" process;

    iii.    displayed a "Welcome Back!" banner;

    iv.    delivered an email with a verification code for a non-existent account, falsely indicating to the user that they already have one,

    v.    containing a message that read "*Log in with this 6-digit code to continue.*", falsely affirming that an account exists that can be authenticated and logged in to,

    vi.    and containing the assertion "*Only people with the code above can log into your account*", falsely indicating that the user possesses an account that people could log in to;

    vii.    prompted the user to provide details to "*Complete*" their account, falsely asserting that they already had an account that could be completed;

    viii.    and conspicuously displayed the banner message "Welcome Back, " followed by the user's name, as part of the initial login experience. (*Exhibit A, Fig 9.10.14: Post-Login False Recognition*). One cannot be "welcome back" to a place if they have never been in that place before.

    d.  **Result**: Because Defendant developed the software to exhibit the above behavior, Defendant knew of the misunderstanding and induced it, so there was no meeting of the minds regarding the essential nature of the

transaction. Consequently, no contract was ever formed, and the
arbitration clause contained within the presented terms is non-existent.

35. Because the defect goes to the very existence of the contract, The Court retains
jurisdiction to determine whether any agreement was formed, not an Arbitrator
(citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*).

36. **Request for Special Master**: Plaintiff anticipates a factual dispute regarding
Defendant's system architecture. Due to Plaintiff's disclosed bearish financial
position, Plaintiff acknowledges he should not have direct access to Defendant's
proprietary source code during discovery.

37. Therefore, Plaintiff requests the appointment of a Special Master under Fed. R.
Civ. P. 53 to inspect Defendant's systems in a "Clean Room" environment and
report to the Court on the existence of the deceptive "Log In", the forced data
retention mechanism, and the systemic technical architecture that permits these
practices (*Exhibit C, Recording W: CEO Admission of Technical Debt and
Platform Pieces to Improve Conversion*).

## COUNT II: VIOLATION OF OREGON UNLAWFUL TRADE PRACTICES ACT
## (ORS 646.608)

38. Plaintiff incorporates the foregoing allegations.

39. Defendant's "Log In" funnel constitutes a deceptive representation that the consumer is accessing an existing service when they are entering a new transaction (ORS 646.608(1)(e)).

40. Defendant's forced retention of financial data and subsequent issuance of false "Resolved" status updates constitute "unconscionable tactics".

41. Defendant violated ORS 646.608(1)(u) by engaging in unfair conduct, specifically by knowingly permitting a transaction to continue when the consumer (Plaintiff) was visibly acting under a misunderstanding of the nature of the transaction (believing he was logging in), a misunderstanding the Defendant's own system induced (ORS 646.607(1)).

42. Defendant's conduct was willful, as evidenced by the issuance of retaliatory legal threats in response to a consumer's accurate documentation of non-compliance.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

## A. INJUNCTIVE RELIEF:

1. **Declaratory Judgment**: A Declaration that Defendant's "Log In" registration funnel creates a systemic barrier to contract formation by affirmatively concealing the essential nature of the transaction (account origination vs. maintenance). Consequently, the purported agreement formed on September 10, 2025, is declared *void ab initio* due to a lack of mutual assent to the essential nature of the contract.

2. **Permanent Injunction (Deceptive Signaling)**: A Permanent Injunction ordering Defendant to cease the practice of generating "Log In" or "Verification" codes for email addresses that do not correspond to existing user records. Defendant must program its systems to return a clear "No Account Found" or "Sign Up Required" message when a non-existent user attempts to log in, thereby preventing the "Verification Loop" deception alleged herein.

3. **Mandatory Remediation**: An injunction requiring Defendant to architecturally separate its "Log In" (Authentication) and "Sign Up" (Registration) workflows on all public-facing platforms (Angi.com, HomeAdvisor.com, et al.) to ensure that no consumer can be funneled into a new

contract without an affirmative, unambiguous selection of a "Sign Up" or "Register" option.

4. A Permanent Injunction ordering Defendant to implement a functional "Delete Payment Method" button on its user interface, accessible to all consumers without the need to contact support.

**B. PROCEDURAL RELIEF:**

5. Appointment of a Special Master: An Order appointing a technical Special Master pursuant to Fed. R. Civ. P. 53, at Defendant's expense, to audit Defendant's digital platforms and verify the existence of the deceptive design patterns alleged herein, thereby resolving discovery disputes related to Plaintiff's financial conflict of interest.

**C. DAMAGES:**

6. **Statutory Damages**: $200.00 per violation under the UTPA.

7. **Punitive Damages**: In an amount sufficient to punish Defendant and deter future misconduct, specifically citing the willful bad faith, false compliance reporting, and retaliatory legal threats issued by corporate counsel. Plaintiff asserts this amount exceeds $75,000.00.

8. **Costs**: Plaintiff's costs of suit.

9. **Other:** Additional relief as the Court deems just.

## VII. LIST OF EXHIBITS

- **Exhibit A:** Forensic Evidence Map (v10.1-civil)
- **Exhibit B:** Correspondence from Angi Counsel (Nov 4, 2025)
- **Exhibit C:** Incorporation of Schedule of Digital Evidence (Referencing physical media lodged on Dec 22, 2025 as Docket Entry 5)
- **Exhibit D**: Redline Comparison of First Amended Complaint

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

**DATED**: January 20, 2026

Respectfully submitted,

/s/ Stephen Marcus Litchfield

_____

**Stephen Marcus Litchfield**

Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2026, I served a true and correct copy of the foregoing FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND UNLAWFUL TRADE PRACTICES on the Defendant by United States Certified Mail, addressed to their Registered Agent as follows:


     Angi Inc.

     c/o CT Corporation System

     780 Commercial St SE, Suite 100

     Salem, OR 97301


Respectfully submitted,


/s/ Stephen Marcus Litchfield

_____

**Stephen Marcus Litchfield**

Plaintiff Pro Se

marclitchfield@gmail.com

14845 SE Monner Rd

Happy Valley, OR 97086

503-307-8953