UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STEPHEN MARCUS LITCHFIELD, | Case No.: 3:25-cv-02394-SI |
| Plaintiff Pro Se, | |
| v. | PLAINTIFF'S RESPONSE IN |
| ANGI INC., | OPPOSITION TO DEFENDANT'S |
| Defendant. | MOTION TO DISMISS |

## I. INTRODUCTION

Plaintiff Stephen Marcus Litchfield brings this action to dismantle systemic deceptive interface designs ("Dark Patterns") and the forced data retention architectures employed by Defendant Angi Inc.

Defendant's Motion to Dismiss relies on a constrained definition of its digital services and an incorrect legal premise that a post-deprivation refund immunizes a corporation from statutory liability. Defendant incorrectly asserts that the Declaratory Judgement claim is derivative of the trade practice violation claim, that it is not yet ripe, and that Plaintiff's pending motion for leave to file a Second Amended Complaint is futile.

Because Plaintiff has suffered an objectively verifiable ascertainable loss, and because the Declaratory Judgment claim presents an independent contract formation dispute ripe for this Court's review, Defendant's motion must be denied.

## II. PROCEDURAL BACKGROUND

On January 20, 2026, Plaintiff filed the operative First Amended Complaint (FAC: ECF 13) with attached exhibits A-C (Ex. A-C: ECF 13-1 to 13-3).

Plaintiff does not oppose Defendant's motion to the extent it seeks dismissal of claims premised on ORS 646.608(1)(u) and ORS 646.607. Plaintiff concedes these specific statutory citations and has filed a pending Motion for Leave to File a Second Amended Complaint (ECF 21) to cleanly excise them and unify the factual allegations strictly under ORS 646.608(1)(e).

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must draw all reasonable inferences in the plaintiff's favor. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

## IV. ARGUMENT

A. Plaintiff Plausibly Alleges an Ascertainable Loss Because a Post-Deprivation Refund Does Not Erase a Vested Statutory Violation.................................................................4

B. Defendant's System Materially Misrepresented the Characteristics of its Digital Service in Violation of ORS 646.608(1)(e)..........................................................6

    1. By engineering a "Log In" interface that represents Registration and Contract Formation as Authentication, Defendant materially misrepresented the Authentication characteristic..................................................................... 8

    2. By engineering an account management architecture that obstructs cancellation and lacks the technical ability to remove payment method information, Defendant materially misrepresented the Account Management characteristic. .........................9

    3. Under Federal Pleading Standards, the Factual Allegations of Forced Data Retention Plausibly State a Claim Under ORS 646.608(1)(e). ...................................11

C. The Declaratory Judgment Claim is Independent and Ripe. ......................................12

D. Amendment is Not Futile. ...........................................................................14

**A. Plaintiff Plausibly Alleges an Ascertainable Loss Because a Post-Deprivation Refund Does Not Erase a Vested Statutory Violation.**

Defendant argues that Plaintiff's UTPA claims must be dismissed because Plaintiff received a refund of the $29.99 charge within nine days, and therefore suffered no "ascertainable loss of money or property". Defendant's argument relies on a fundamental misapplication of Oregon law that conflates the mitigation of actual damages with the extinguishment of a statutory violation.

Under the UTPA, a private plaintiff must plead an ascertainable loss of money or property resulting from an unlawful trade practice. ORS 646.638(1). The Oregon Supreme Court has clarified that "ascertainable loss" means "any determinable [economic] loss" that is "objectively verifiable." *Clark v. Eddie Bauer LLC*, 371 Or. 177, 185 (2023). Plaintiff explicitly meets this standard.

Plaintiff suffered an ascertainable loss of $29.99 at the exact moment of the subscription renewal transaction on September 10, 2025, at 8:34 AM. This loss was the result of Defendant delivering a fundamentally defective digital subscription that systemically misrepresented intrinsic authentication and account management characteristics.

At the instant Defendant extracted these funds, Plaintiff exchanged $29.99 for a digital subscription that was fundamentally defective on two structural fronts: the delivered digital architecture systemically misrepresented its intrinsic **authentication** characteristic (by hard-coding a deceptive registration funnel) and its **account management** characteristics (by omitting data deletion controls). When Plaintiff

encountered the "Log In" funnel at 8:36 AM to investigate the charge, he was merely interacting with the pre-existing architectural defect that was delivered to him at 8:34 AM. Defendant delivered a digital service that materially omitted the promised and reasonably expected capability to revoke financial authorization, constituting an unfair trade practice under ORS 646.608(1)(e).

The loss is not premised on future hypothetical harm, but on the immediate, realized deprivation of $29.99 in exchange for a digital architecture hard-coded to misrepresent the system characteristics of authentication and account management.

But for Defendant's engineered omission of critical account management and data deletion controls, the digital subscription delivered to Plaintiff would have retained its represented, functional value. While Defendant's refund on September 19 mitigated Plaintiff's compensatory damages, it does not retroactively cure the delivery of a defective product, nor does it extinguish the vested statutory violation and minimum penalties under ORS 646.638(1).

Defendant attempts to rely on *Paul v. Providence Health Sys.-Oregon*, 351 Or. 587 (2012), to argue that Plaintiff's loss is merely speculative. This reliance is entirely misplaced. In *Paul*, the plaintiffs' data was compromised, but no actual money had yet been taken; the loss was a hypothetical future risk of identity theft. In stark contrast, Defendant actually extracted $29.99 from Plaintiff's bank account. As the Oregon Supreme Court noted in *Clark*, an ascertainable loss "may be so small that the common

law likely would reject it," yet it still firmly satisfies the UTPA. This was a realized, temporal deprivation of Plaintiff's property.

Defendant's assertion that a subsequent refund extinguishes a vested statutory violation defies the plain text of the UTPA. ORS 646.638(1) expressly provides that a victim of an unlawful trade practice may recover "actual damages or $200, whichever is greater," as well as punitive damages. The Oregon legislature established this statutory minimum precisely to incentivize the private enforcement of the exact type of systemic, low-dollar consumer harm alleged here.

Defendant's refund does not retroactively immunize Defendant from statutory liability, and it does not extinguish Plaintiff's statutory right to seek $200 for each distinct, willful violation that arose from the deceptive representations, nor does it extinguish the claim for punitive damages warranted by Defendant's willful conduct. To accept Defendant's argument that a refund retroactively erases statutory standing would grant corporations absolute immunity to deploy deceptive digital architectures to unlawfully extract funds at scale, knowing they face zero legal liability so long as they refund the relatively few consumers who demand their money back.

## B. Defendant's System Materially Misrepresented the Characteristics of its Digital Service in Violation of ORS 646.608(1)(e).

Defendant engineered two distinct systemic misrepresentations (see Table 1) before charging the recurring $29.99 subscription fee, and before Plaintiff attempted to

authenticate and manage the account to cancel and remove his payment method. The engineered mechanisms automated the proximate cause to Plaintiff's ascertainable loss.

| CHARACTERISTIC | SYSTEM MISREPRESENTATION | STATUTORY DAMAGES |
|---|---|---|
| **Authentication** | Registration and Contract Formation misrepresented as *Authentication*. | $200 |
| **Account Management** | Interface lacking payment method deletion controls post-cancellation represented as *Account Management*. | $200 |

[Table 1 - Engineered Misrepresentations]

Defendant attempts to evade liability under ORS 646.608(1)(e) by artificially severing its digital user interface from the "services" it sells, defining its business strictly as the physical provision of home repair contractors. This reductive framing ignores the economic and technical reality of the transaction. Plaintiff was not charged $29.99 for a physical home repair; Plaintiff was charged for an "Angi Key Membership," which is a digital subscription service.

In a digital subscription service, the user interface, the authentication gateway, and the account management controls are not collateral to the service; they are the primary, operational mechanisms of the service itself. The fundamental, advertised "characteristics, uses, and benefits" of a digital subscription necessarily include a secure authentication mechanism and functional data lifecycle management controls. Without a functional and secure authentication characteristic, the service literally cannot be accessed. Without a functional and complete account management characteristic, the account by definition cannot be managed by the user.

Defendant's reliance on *McCarrell* (regarding price discounts) and *Mendoza* (regarding hidden financing kickbacks) is fundamentally flawed and entirely inapplicable. Price and financing are extrinsic to the mechanical function of a product. In contrast, a secure mechanism to authenticate users and for those users to manage their accounts are intrinsic, functional characteristics of a cloud-based software subscription.

### 1. By engineering a "Log In" interface that represents Registration and Contract Formation as Authentication, Defendant materially misrepresented the Authentication characteristic.

The integrity of the authentication mechanism is a fundamental, intrinsic characteristic of the service. By engineering a system that functionally misrepresents the intrinsic authentication characteristic, Defendant violates ORS 646.608(1)(e).

Defendant attempts to dismiss Plaintiff as a merely "confused" consumer whose alleged frustration does not equate to a statutory violation. However, the forensic record proves this "confusion" was the intended, proximate result of a deceptive digital architecture. The true point of deception was not a mere frontend greeting; it was a mechanical misrepresentation of the system's authentication state. When Plaintiff submitted an unregistered email address within the "Log In" (authentication) workflow, Defendant's system did not return a standard "Account Not Found" error. Instead, it generated a false positive state, delivering an automated email containing a secure 6-digit code with the explicit instruction: "Log in with this 6-digit code to continue." The email further asserted that "Only people with the code above can log into *your account*" (FAC ¶ 15; Ex.

A, Fig 9.10.11; Ex. C, Recording N), affirmatively representing that an account already existed that could be accessed.

Plaintiff was not confused; Plaintiff was actively deceived by a software implementation that systematically misrepresented an authentication workflow as a registration and contract formation workflow.

### 2. By engineering an account management architecture that obstructs cancellation and lacks the technical ability to remove payment method information, Defendant materially misrepresented the Account Management characteristic.

When a consumer purchases a digital subscription, the ability to securely manage the account data lifecycle and terminate the subscription are fundamental, intrinsic characteristics of that service. Defendant delivered a digital product that systematically obstructed these management characteristics through deceptive interfaces, fragmented domains, and missing deletion functionality.

Defendant's Motion to Dismiss minimizes the obstruction of membership cancellation by incorrectly asserting Plaintiff merely "refused to provide responses." This ignores the well-pleaded facts. As detailed in the FAC, the IVR system affirmatively misrepresented its function by announcing to callers, "An advisor will be with you shortly" (FAC ¶ 24.b; Ex. A, Fig 9.10.6). Relying on this explicit representation, Plaintiff waited for the promised advisor and was automatically disconnected three consecutive times. When Plaintiff affirmatively interacted with the system on two subsequent attempts, the

system presented sub-menu options entirely unrelated to billing or cancellation before automatically disconnecting again (FAC ¶ 24.b).

After Plaintiff's wife successfully cancelled the membership (Ex. A, Fig 9.12.2), Defendant's system retained Plaintiff's payment information, affording no technical interface mechanism to remove the payment method without replacement (FAC ¶ 26; Ex. C, Recordings I and O). This omission of functionality necessary to manage an account constitutes a misrepresentation of the characteristic of account management, resulting in a loss of dominion over the user's own financial property.

Defendant's misrepresentations were compounded by inaccurate compliance reporting. When Plaintiff attempted to bypass the hard-coded obstruction by issuing a formal legal demand for data deletion, Defendant's agents inaccurately reported their status, officially logging the request as "Resolved" on October 28, 2025 (FAC ¶ 28; Ex. A, Fig 10.28.2). However, forensic video evidence captured on October 31 proves this representation was factually false, as the financial data remained accessible in the system days later (FAC ¶ 28; Ex. C, Recording R). Defendant's October 28 representation of "resolution" was therefore a verifiable, affirmative falsehood, a fact later admitted by Defendant's own Corporate Counsel on November 4 when stating the deletion was only "now completed" (FAC ¶ 30; Ex. B). Delivering a digital product that lacks basic data deletion controls, and subsequently issuing false compliance statements to consumers attempting to manage their data, constitutes a material misrepresentation of the service's operational characteristics.

By affirmatively concealing these severe functional limitations and deploying systems that actively force financial data retention, Defendant misrepresented the operational characteristics and qualities of the "Angi Key Membership," a digital subscription service obtained strictly for personal and household property maintenance benefits.

Delivering a subscription service that systematically misrepresents the essential characteristics of Account Management places this conduct squarely within the purview of ORS 646.608(1)(e).

### 3. Under Federal Pleading Standards, the Factual Allegations of Forced Data Retention Plausibly State a Claim Under ORS 646.608(1)(e).

Defendant attempts to dismiss the forced data retention allegations by attacking the FAC's citation to ORS 646.608(1)(u) and the lack of an administrative rule. This elevates form over substance and ignores federal pleading standards.

Federal Rule of Civil Procedure 8(a) requires a complaint to plead sufficient facts to state a plausible claim, not perfect legal theories. The Ninth Circuit explicitly holds that a complaint should not be dismissed for an imperfect statement of the legal theory supporting the claim. See *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint claims for relief, not causes of action, statutes or legal theories.").

The FAC explicitly alleges the factual mechanics of Defendant's forced data retention architecture (FAC ¶¶ 26-28). As argued above, these facts clearly articulate a material misrepresentation of the account management characteristics of Defendant's digital service. Because the facts pled in the FAC state a plausible claim for relief under ORS 646.608(1)(e), the claim survives Defendant's 12(b)(6) motion, regardless of the FAC's citation to subsection 1(u).

### C. The Declaratory Judgment Claim is Independent and Ripe.

Defendant argues that Plaintiff's Declaratory Judgment claim must be dismissed because it is "derivative" of the UTPA claims and that it is not ripe because Defendant is not brandishing any "Damoclean threat of impending litigation".

Plaintiff's Declaratory Judgment claim is not derivative of the Oregon UTPA; it is an independent, substantive claim rooted in fundamental common law contract principles, specifically the Restatement (Second) of Contracts § 20 (Lack of Mutual Assent). Because Plaintiff was deceived as to the fundamental character of the transaction (FAC ¶ 34) there was no "meeting of the minds." Since the contract formation transaction lacked mutual assent, no contract was ever formed.

Defendant's reliance on *City of Reno* and *Golden* is misplaced. Those cases address plaintiffs seeking to interpret or preemptively defend against the enforcement of validly formed contracts. In *City of Reno*, plaintiffs attempted to use the DJA to invent a statutory right to collect fees that did not otherwise exist. Here, Plaintiff is invoking the

Court's well-established jurisdiction to resolve a threshold gateway dispute over whether a contract was formed at all. Disputes over mutual assent under the Restatement (Second) of Contracts § 20 are gateway issues exclusively reserved for judicial determination, regardless of whether a breach is alleged (*Granite Rock Co.*). Under the Federal Arbitration Act (FAA) and binding Supreme Court precedent, disputes over whether a contract was formed at all—including whether mutual assent existed under the Restatement (Second) of Contracts § 20—are gateway issues exclusively reserved for judicial determination. See *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

The substantive, independent controversy is the legal effect of Defendant's digital architecture on contract formation. While Defendant has not yet sought to affirmatively enforce its Terms of Service in this specific proceeding, Defendant actively relied upon its integrated Terms and Privacy Policy during the pre-litigation dispute to dictate Plaintiff's rights and justify its data practices (FAC ¶ 30; Ex. B). Plaintiff maintains that the architecture's misrepresentation of the transaction's essential nature on September 10, 2025, precluded any meeting of the minds, rendering any purported agreement void ab initio.

Resolving this gateway issue of contract formation is an active, necessary controversy. Until the Court declares whether this specific "Log In" architecture legally manifests mutual assent, Plaintiff is permanently deterred from interacting with Defendant's marketplace due to the ongoing hazard of being subjected to unauthorized, unilaterally imposed legal burdens.

Declaratory Judgment is ripe and necessary because Defendant's immutable data-retention architecture presents a continuous hazard, guaranteeing Plaintiff's financial data will be captured and retained again if he resumes use of the service. Plaintiff requires the Court's declaration to safely engage with Defendant's dominant local marketplace in the future without being subjected to void, deceptively originated contracts and the inability to successfully manage his own account. A declaratory judgment under the Restatement (Second) of Contracts § 20 is the proper, independent mechanism to resolve this threshold gateway issue of contract formation.

### D. Amendment is Not Futile.

Defendant urges the Court to dismiss the First Amended Complaint with prejudice, arguing that any amendment would be futile. Defendant's futility argument relies entirely on the flawed premise that a past refund permanently extinguishes all standing. This is incorrect as a matter of law.

The First Amended Complaint properly sought injunctive relief to dismantle Defendant's deceptive architectures. However, to the extent the Court requires more specific factual allegations regarding Plaintiff's ongoing Article III standing for such relief, Plaintiff's pending Motion for Leave to File a Second Amended Complaint definitively cures any such pleading deficiency (Proposed SAC ¶ 9.d).

As detailed in the proposed Second Amended Complaint, Plaintiff is a homeowner who desires to utilize Defendant's dominant marketplace in the future for practical

household needs. However, Plaintiff is currently deterred from doing so because of Defendant's immutable, hard-coded data retention architecture. Under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), a previously wronged consumer retains standing to seek injunctive relief if they face a threat of future harm from the inability to rely on the defendant's representations or systemic functions.

The threat of future injury to Plaintiff is not that he will be "tricked" again, but rather that Defendant's platform fundamentally lacks a mechanism to delete payment data. If Plaintiff utilizes the service again, he will be required to provide a payment method, and his financial data will inevitably be captured and subjected to the exact same forced retention architecture (FAC ¶ 26; Ex. C, Recording I). Because this hard-coded functionality guarantees future injury and deters Plaintiff from future use of Defendant's marketplace, Plaintiff retains cognizable, ripe Article III standing for forward-looking injunctive relief. Therefore, the proposed amendment is not futile, and Defendant's request for dismissal with prejudice must be denied.

## V. CONCLUSION

Plaintiff's proposed Second Amended Complaint successfully clarifies Article III standing, unifies the factual allegations under the appropriate statutory framework, and promotes judicial economy by narrowing the claims before the Court. Defendant's opposition relies on a legally flawed interpretation of the UTPA that attempts to divorce digital interface mechanics from the digital services they govern.

For the foregoing reasons, Plaintiff has plausibly alleged actionable violations of ORS 646.608(1)(e) based on the facts pled within the four corners of the First Amended Complaint. Plaintiff respectfully requests that Defendant's Motion to Dismiss be DENIED in its entirety on the merits. In the alternative, should the Court find any pleading deficiencies within the First Amended Complaint, Plaintiff requests the Court grant the pending Motion for Leave to File a Second Amended Complaint to cure such defects.

**DATED**: March 17, 2026

Respectfully submitted,

/s/Stephen Marcus Litchfield

_____

**Stephen Marcus Litchfield**
Plaintiff Pro Se
marclitchfield@gmail.com
14845 SE Monner Rd
Happy Valley, OR 97086
503-307-8953