UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **STEPHEN MARCUS LITCHFIELD**, | **Case No.:** 3:25-cv-02394-SI |
| Plaintiff Pro Se, | |
| v. | **PLAINTIFF'S REPLY IN SUPPORT** |
| **ANGI INC.,** | **OF MOTION FOR LEAVE TO** |
| Defendant. | **AMEND (SECOND)** |

## I. INTRODUCTION

Defendant Angi Inc. opposes the amendment solely on the grounds of futility. However, Defendant's arguments rely on an incorrect characterization of Plaintiff's pleadings and the substitution of the mitigation of compensatory damages for the extinguishment of statutory liability. Because the Proposed Second Amended Complaint (SAC) clearly pleads objectively verifiable economic losses, an independent and ripe controversy regarding contract formation, and ongoing Article III standing for injunctive relief, the amendment is not futile and leave should be freely given.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave when justice so requires." The Ninth Circuit applies this policy with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). An

amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). The party opposing amendment bears the burden of establishing futility.

## III. ARGUMENT

    A. Plaintiff Plausibly Alleges an Ascertainable Loss Because a Post-Deprivation Refund Mitigates Damages but Does Not Extinguish a Vested Statutory Violation.

        1. Plaintiff's loss vested at the moment of the automated transaction, distinguishing this case from precedent governing the mere temporary delay of funds.

        2. Defendant's refund mitigates compensatory damages but cannot confer statutory immunity for the underlying unlawful practice.

    B. Defendant Materially Misrepresented the Characteristics of its Digital Services Under ORS 646.608(1)(e).

    C. The Declaratory Judgment Claim Presents an Independent, Ripe Controversy Regarding Contract Formation.

    D. The Proposed Second Amended Complaint Properly Pleads Article III Standing for Injunctive Relief.

### A. Plaintiff Plausibly Alleges an Ascertainable Loss Because a Post-Deprivation Refund Mitigates Damages but Does Not Extinguish a Vested Statutory Violation.

Defendant argues that Plaintiff's UTPA claims must be dismissed because the $29.99 charge was refunded nine days after the transaction, asserting Plaintiff therefore suffered no ascertainable loss.[1] Defendant relies on *Jarratt v. Patterson*, 337 Or. App. 590 (2025) to characterize this nine-day period as a mere temporary inaccessibility of funds. This argument rests on a fundamental mischaracterization of the economic reality of the transaction and conflates the mitigation of compensatory damages with the extinguishment of statutory liability.

### 1. Plaintiff's loss vested at the moment of the automated transaction, distinguishing this case from precedent governing the mere temporary delay of funds.

The legal framework of *Jarratt* governs scenarios where funds are temporarily delayed or frozen. In such instances, the legal injury is an interference with the utility of the property. Courts generally require a plaintiff to demonstrate actual, incidental costs (e.g., overdraft fees) to prove an objectively verifiable economic injury arising from a temporary loss of utility.

---

[1] Defendant's reliance on *Jarratt v. Patterson*—an unpublished memorandum opinion concerning the Oregon elder abuse statute—highlights the absence of any binding UTPA jurisprudence supporting Defendant's position that a post-deprivation refund extinguishes statutory liability for a deceptive extraction.

Here, Plaintiff's funds were not delayed, frozen, or merely rendered inaccessible. They were extracted as consideration in a completed commercial exchange. On September 10, 2025, Defendant executed an automated debit of $29.99 from Plaintiff's account to renew a digital subscription.

As detailed in the Proposed SAC,[2] the digital subscription delivered to Plaintiff upon this automated renewal systemically lacked its represented, intrinsic characteristics. Specifically, the digital architecture omitted an authentication gateway that accurately resolves user identity, operating instead as an undisclosed contract origination mechanism, and lacked the technical capability for a user to delete payment data post-cancellation. The ascertainable loss did not arise from a contemporaneous, affirmative tender of payment by Plaintiff; rather, it vested at the precise moment Defendant executed the automated transaction, exchanging Plaintiff's funds for a digital product that materially misrepresented its operational capabilities.

When a consumer is charged for a product that systemically lacks its represented operational characteristics, the ascertainable loss vests concurrently with the transaction. The loss is the principal amount paid. Under Oregon law, an ascertainable loss must simply be "objectively verifiable." *Clark v. Eddie Bauer*, 371 Or. 177, 185

---

[2] Defendant notes in a footnote that Plaintiff's redline comparison document inadvertently omitted the markup formatting for Paragraph 11 (Def. Opp'n at 6, n.1). Plaintiff appreciates Defendant identifying this formatting omission. The substantive text of the Proposed Second Amended Complaint was and remains accurate. For the Court's convenience, a fully corrected redline comparison page for Paragraph 11 is attached hereto as Exhibit 1.

(2023). The execution of the $29.99 debit for a defective digital architecture provides the precise, objectively verifiable economic loss required by the statute.

### 2. Defendant's refund mitigates compensatory damages but cannot confer statutory immunity for the underlying unlawful practice.

Because Plaintiff's ascertainable loss vested upon the completion of the transaction for a defective good, Defendant's subsequent refund of the $29.99 constitutes a mitigation of compensatory damages. It does not retroactively reverse the transaction, nor does it erase the vested statutory violation.

ORS 646.638(1) expressly provides that a victim of an unlawful trade practice may recover "actual damages or $200, whichever is greater." The Oregon legislature established this statutory minimum precisely to penalize the unlawful practice itself, ensuring that defendants remain accountable under the UTPA even when actual compensatory damages are subsequently mitigated to zero.

To hold that a post-deprivation refund extinguishes standing would grant corporations absolute immunity to deploy deceptive digital architectures and unlawfully extract funds at scale, knowing they face zero legal liability so long as they refund the subset of consumers who successfully navigate their obstructive cancellation processes. Having suffered an objectively verifiable loss at the moment of transaction, Plaintiff retains full standing to pursue statutory minimums and punitive damages for Defendant's conduct.

**B. Defendant Materially Misrepresented the Characteristics of its Digital Services Under ORS 646.608(1)(e).**

Defendant argues the proposed amendment is futile by asserting that the "Log In" funnel does not relate to the characteristics of the "contractor services Angi facilitates." This argument relies on an overly narrow definition of Defendant's digital product offerings. As explicitly pled in the Proposed SAC, Plaintiff was charged for an "Angi Key Membership," which is a digital subscription service. The intrinsic "characteristics, uses, and benefits" of a cloud-based digital subscription necessarily include its authentication gateway and its account management controls.

By engineering a "Log In" interface that operates as an undisclosed contract origination mechanism, Defendant materially misrepresented the authentication characteristics of its digital platform. Furthermore, by providing an interface that systemically lacks the technical capability to delete payment data post-cancellation, Defendant materially misrepresented the account management characteristics of its service.

Defendant's reliance on cases involving extrinsic factors like price discounts (*McCarrell*) or financing kickbacks (*Mendoza*) is distinguishable from the intrinsic mechanical functions of the software architecture alleged here.

### C.  The Declaratory Judgment Claim Presents an Independent, Ripe Controversy Regarding Contract Formation.

Defendant asserts that Plaintiff's Declaratory Judgment claim is "derivative" of the UTPA claims and must be dismissed, citing *City of Reno v. Netflix, Inc.*, 52 F.4th 874 (9th Cir. 2022), for the premise that the Declaratory Judgment Act (DJA) does not provide an independent cause of action. This argument mischaracterizes both the nature of the claim and the contents of the Proposed Second Amended Complaint.

Plaintiff does not rely on the federal DJA to create a substantive legal right. Rather, Plaintiff properly invokes the DJA as the procedural vehicle to seek relief for an independent, well-pleaded state-law cause of action: the invalidation of the purported agreement under Oregon common law due to a fundamental lack of mutual assent.

As detailed in the Proposed SAC, Plaintiff alleges that Defendant's deceptive digital architecture precluded the "meeting of the minds" necessary to form a contract under the Restatement (Second) of Contracts § 20. Because Plaintiff was actively deceived regarding the essential nature of the transaction (account origination versus account maintenance), no valid contract—and therefore no valid arbitration clause—was ever formed. This constitutes a standalone substantive claim governed by state contract law, entirely independent of the statutory UTPA violations.

Furthermore, this controversy is ripe and necessary. Defendant actively relied upon its integrated Terms and Privacy Policy during the pre-litigation dispute to dictate Plaintiff's rights and justify its pre-litigation data practices. Resolving this gateway issue

of contract formation is an active controversy because Defendant's immutable architecture presents a continuous hazard. Until the Court declares the legal effect of this digital interface on contract formation, Plaintiff is deterred from utilizing Defendant's dominant local marketplace due to the ongoing threat of being subjected to void, deceptively originated contracts—and the subsequent mechanical certainty that his financial data will once again be captured and forcibly retained without a deletion mechanism.

### D. The Proposed Second Amended Complaint Properly Pleads Article III Standing for Injunctive Relief.

Defendant asserts that the proposed amendment is futile, characterizing Plaintiff's request for systemic remediation as a reaction to personal "frustrations". However, this overlooks Section III.9.d of the Proposed Second Amended Complaint, which introduces specific factual allegations establishing Plaintiff's ongoing Article III standing for injunctive relief.

Under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), a previously harmed consumer retains Article III standing to seek injunctive relief if they desire to use the defendant's services in the future but are deterred from doing so by an inability to rely on the defendant's systems. As explicitly pled, Plaintiff is a homeowner who desires to utilize Defendant's local marketplace in the future, but is currently deterred by the immutable architecture of Defendant's platform (Proposed SAC ¶ 9.d).

The threat of future injury is not a speculative possibility of future deception; it is a mechanical certainty. Defendant's digital architecture fundamentally lacks a "Delete Payment" function (Proposed SAC ¶ 26). If Plaintiff utilizes the service again, he will be required to provide a payment method. Because Defendant's platform provides no mechanism for removal, Plaintiff's financial data will inevitably be captured and subjected to forced retention. This architectural omission constitutes a concrete and imminent threat of future harm. Defendant's assertion that amendment is futile is therefore unsupported by the factual record.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff has demonstrated that the proposed Second Amended Complaint cures any alleged pleading deficiencies and states plausible claims for relief. Defendant has failed to meet its burden of establishing that the amendment is futile under the Ninth Circuit's liberal pleading standards.

Plaintiff respectfully requests that the Court grant the Motion for Leave to File a Second Amended Complaint.

**DATED**: March 20, 2026
Respectfully submitted,

/s/Stephen Marcus Litchfield
_____

**Stephen Marcus Litchfield**
Plaintiff Pro Se
marclitchfield@gmail.com

14845 SE Monner Rd
Happy Valley, OR 97086
503-307-8953