# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

**STEPHEN MARCUS LITCHFIELD**,

    Plaintiff Pro Se,

v.

**ANGI INC.**,

    Defendant

**Case No.:** 3:25-cv-02394-SI

**PLAINTIFF'S MOTION FOR ESI**

**PRESERVATION ORDER**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), Plaintiff certifies that the parties conferred in good faith by telephone on March 30, 2026. Plaintiff sought a stipulation to sequester the specific backend system data at issue in this litigation. Defendant did not agree to this request. The parties remain at an impasse.

**TABLE OF CONTENTS**

**I. INTRODUCTION** ..................................................................................3

**II. FACTUAL BACKGROUND & THE THREAT OF SPOLIATION** ..................4

    A. The Ephemeral Nature of the Requested ESI and the Risk of Spoliation ...............4

    B. The Specific Categories of ESI Requiring Affirmative Preservation.......................5

        1. Feature Flags and A/B Testing States ....................................................6

        2. CI/CD Pipeline Deployment Logs and Test Artifacts ..........................6

        3. Payment Processor API Transactions ..................................................7

        4. Server Access and Audit Logs...............................................................7

    C. Inadequacy of Defendant's Internal Data Controls ................................................ 8

**III. LEGAL STANDARD**..........................................................................9

**IV. ARGUMENT** ................................................................................. 10

    A. The Requested ESI is Ephemeral and Critical to the Merits .................................10

    B. Irreparable Harm Will Occur Without Court Intervention ....................................10

    C. The Burden on Defendant is Minimal and Proportional ........................................11

**V. CONCLUSION** ............................................................................... 12

## I. INTRODUCTION

Plaintiff Stephen Marcus Litchfield brings this Motion for an ESI Preservation Order to secure the objective technical baseline of this dispute. The core evidence consists of ephemeral information, including deployment logs, payment processor API transactions, feature-flag evaluation states, and server access logs. By design, modern backend systems operate under routine automated retention policies that continuously overwrite historical data. While Defendant may rely on confidential, internal procedures to preserve evidence, standard administrative directives issued to personnel are frequently insufficient to halt automated, server-level data retention policies.

Furthermore, pre-litigation correspondence documents severe limitations in Defendant's internal controls regarding the management of user data, issuing multiple written assertions stating that Plaintiff's data deletion request had been "completed" and "resolved". However, the data had not been deleted and remained fully retrievable days later. These internal control failures demonstrate that the Court cannot safely rely on Defendant's assertions that their "privileged and confidential" processes have sequestered the necessary ephemeral system information.

Because the parties were unable to reach an agreement to voluntarily ensure the isolation of the ephemeral ESI before its automatic destruction, Court intervention is necessary to ensure the preservation of this evidence. Plaintiff respectfully requests that the Court sever the issue of discovery production from data preservation and compel Defendant to execute a targeted extraction of the disputed records to non-volatile cold storage, to freeze the objective technical baseline.

## II. FACTUAL BACKGROUND & THE THREAT OF SPOLIATION

This dispute centers on whether Defendant utilizes user interfaces and backend architectures that continuously misrepresented the characteristics of Defendant's service, thereby constituting a violation of the Oregon Unlawful Trade Practices Act. Defendant asserts its systems operated compliantly.

### A.  The Ephemeral Nature of the Requested ESI and the Risk of Spoliation

In modern software architectures, vast amounts of backend data such as API request payloads, routing analytics, and temporary feature toggles, are designed to be ephemeral. To manage server costs and storage capacity, technology companies employ automated deletion mechanisms which routinely overwrite or permanently purge this data. A standard, passive litigation hold, which typically instructs human employees not to delete files, is entirely ineffective at preventing deletion of critical evidence by scheduled deletion policies (*Litchfield Decl*. ¶¶ 4-7).

While Plaintiff does not possess internal access to Defendant's proprietary network architecture, Plaintiff's professional background as a Staff Software Engineer and Architect (*Litchfield Decl*. ¶ 3) provides personal knowledge of how high-velocity digital platforms operate. Modern cloud infrastructures utilizing API gateways and Continuous Integration/Continuous Deployment (CI/CD) pipelines inherently rely on automated Time-To-Live (TTL) policies, log rotation, and other data lifecycle automation to manage data storage costs.

Given these fundamental architectural realities, there is a severe, objectively reasonable risk that the relevant backend logs are subject to routine, rolling automated deletion cycles. As time continues to elapse since the operative events of the fall of 2025, these historical logs age closer to their configured retention limits, placing them at imminent and escalating risk of permanent expiration.

To the extent that Defendant's systems store ephemeral information related to this case that will be deleted or overwritten by data lifecycle enforcement mechanisms, Defendant's engineering team must take affirmative technical action to extract this data and isolate it in cold storage (e.g., an AWS S3 bucket) in order to prevent the destruction of evidence. Unless Defendant can submit a sworn declaration certifying that the specific classes of data are isolated or otherwise secured to be structurally immune from automated purging, the threat of spoliation requires judicial intervention.

Plaintiff is not seeking discovery, production, or extraction of this data for review at this juncture. This Motion simply seeks to ensure that Defendant implements an affirmative technical intervention while this litigation is pending.

### B. The Specific Categories of ESI Requiring Affirmative Preservation

To ensure the digital state of the platform at the time of the relevant events can be objectively reconstructed, Plaintiff requests the preservation of four specific categories of system data. This request is strictly limited to Plaintiff's accounts, session IDs, and the relevant timeframe of September to November 2025:

### 1.  Feature Flags and A/B Testing States

Modern web platforms use "feature flags" as digital switches to conditionally show different versions of a website to different users, or otherwise conditionally switch behaviors on and off.

Preserving these historical configuration states is necessary to objectively determine exactly which version of the login and account interfaces were served to Plaintiff during the relevant sessions, and identify the specific behaviors Defendant's system exhibited during the relevant timeline.

### 2.  CI/CD Pipeline Deployment Logs and Test Artifacts

Continuous Integration/Continuous Deployment (CI/CD) systems run automated tests and execute workflows to deploy tested versions of the software to the production environments. CI/CD systems act as a ledger of automated test runs and software deployments, but the runs produce large volumes of data that will typically need to be purged at some point to reclaim resources.

The valuable logs from CI/CD systems record exactly when new code was deployed to the live website and whether automated tests passed or failed. Preserving these logs establishes a factual, chronological baseline of the software's operational state.

### 3.  Payment Processor API Transactions

When a user interacts with a system's payment interface, the system communicates with a third-party payment processor (in Defendant's case, Stripe) to exchange the user's

payment information with a token that allows the controlling system to later debit and credit the card without storing the user's card information directly. High-volume systems such as Defendant's will typically retain full details and payloads of API requests and responses for only a limited time to conserve resources and remain within infrastructure quotas.

Preserving the full details of the specific messages exchanged within the relevant timeframe is the only way to objectively verify what instructions Defendant's servers transmitted regarding the specific operations performed on Plaintiff's financial property.

### 4.  Server Access and Audit Logs

High-volume systems such as Defendants' generate large streams of valuable logs and auditing details that act as the digital receipts of all user interactions with the system. They record the exact timestamps when Plaintiff's browser made requests to view a specific webpage or submit a form, including detailed records of registration and login events, login/registration verification email delivery, and behaviors of the payment system.

These system logs form the foundational timeline of the user's interaction with the platform's architecture, but due to their size and volume it is a common policy for these logs to be rotated or truncated after a period of time.

### C. Inadequacy of Defendant's Internal Data Controls

Defendant has declined to stipulate to the technical preservation of this data, asserting during the Local Rule 7-1 conferral that the details of its internal litigation hold are "privileged and confidential." (*Litchfield Decl.* ¶ 7) Because Defendant shields its preservation methods from scrutiny, Plaintiff and this Court are left with no verifiable assurance that Defendant has acted to preserve ephemeral data related to Plaintiff's accounts for the relevant timeframe.

The necessity of court-ordered, verifiable technical intervention is further underscored by Defendant's documented internal operational failures in response to a formal request for the deletion of Plaintiff's payment method. On October 28, 2025, Defendant issued false assertions of compliance with the deletion, the financial data remaining retrievable until after October 31. On November 4, Defendant's legal counsel then asserted the request had been previously resolved, but in the same email simultaneously admitted that the technical deletion had only *now* been completed. (*Litchfield Decl.* ¶ 15, Ex. E).

This contradictory correspondence, preceded by multiple false statements of compliance from Defendant's Privacy and IT Service Desk departments regarding the same data subjects, amounted to a severe failure of Defendant's internal controls. The contradictory communications between October 27 and November 4, 2025, demonstrate a critical, structural communication failure between Defendant's Legal department and its IT operations. When Defendant's corporate counsel asserts in writing that it possesses no such user data (*Litchfield Decl.* ¶ 13, Ex. C), while Defendant's IT and Privacy departments concurrently assert the deletion ticket is

"resolved" and "completed," (*Litchfield Decl.* ¶ 14, Ex. D) it establishes that Defendant's Legal department lacks basic visibility into its own IT operations. If Defendant's Legal department cannot accurately track or execute a single user's data deletion request during an active, escalated dispute, the Court cannot rely on an internal, privileged and confidential "litigation hold" to successfully override automated engineering retention policies without judicial oversight.

Defendant's demonstrated operational disconnect and profound internal control failures necessitate a targeted Court order compelling the technical sequestration of this data to cold storage.

## III. LEGAL STANDARD

Federal courts possess inherent authority to issue preservation orders to prevent the spoliation of evidence. A preservation order is justified when a party demonstrates: (1) a significant level of concern for maintaining the integrity of the evidence; (2) irreparable harm if the evidence is lost; and (3) that the burden of preservation is proportional to the needs of the case. See *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004) (widely adopted by district courts within the Ninth Circuit to evaluate preservation orders).

## IV. ARGUMENT

### A. The Requested ESI is Ephemeral and Critical to the Merits

The defined ESI constitutes the primary objective record in this dispute. Evaluating whether Defendant's backend code aligned with its front-end representations to the consumer requires analysis of the Feature Flag states, CI/CD runs, and system logs. Because this data is generated continuously at high volumes, cloud architectures aggressively purge it. There is an imminent likelihood that this data will be automatically rotated out of existence if not affirmatively sequestered.

### B. Irreparable Harm Will Occur Without Court Intervention

Once an ephemeral system log is truncated by an automated policy or script, it cannot be reconstructed through depositions or traditional document requests. Without immediate judicial intervention, standard system infrastructure policies will inevitably discard the foundational evidentiary record.

Defendant has indicated it relies on a "privileged and confidential" internal litigation hold to prevent this destruction. However, the first prong of the *Capricorn* standard requires the Court to assess the "level of concern for maintaining the integrity of the evidence." Here, that concern is exceptionally high. As detailed in Section II(C), Defendant has already demonstrated a severe, documented inability to execute and verify a simple, manual data deletion request across its Legal and IT departments.

Because Defendant's internal administrative controls are demonstrably fractured, a passive, "confidential" legal hold directive is insufficient to prevent the automated destruction of the crucial ephemeral ESI. Irreparable spoliation is highly likely unless this Court issues a targeted order compelling Defendant's engineering personnel to affirmatively extract and sequester the identified ephemeral data to cold storage.

### C. The Burden on Defendant is Minimal and Proportional

The requested Preservation Order is strictly limited in scope and does not mandate the immediate processing, review, or production of any Electronically Stored Information (ESI). The burden of preservation in this specific context is distinct from, and substantially lower than, the burden of active production.

Plaintiff's request does not require Defendant to alter its enterprise-wide Data Lifecycle Management policies, suspend routine log-rotation globally, or interrupt its broader continuous integration/continuous deployment (CI/CD) operations. Rather, the request is narrowly tailored to the isolation of only the specific ephemeral ESI described herein.

For an entity operating a modern, large-scale cloud infrastructure, isolating and archiving a strictly constrained dataset limited to specific accounts constitutes a standard administrative procedure. The operational and financial resources required to execute this targeted export and maintain the exported artifacts in cold storage are minimal, as modern cloud platforms and services provide convenient query and export capabilities.  This narrow preservation requirement is proportional to the needs of the

case and is necessary to prevent the routine, automated overwriting of the core technical

records at issue while the Court considers the pending pleadings.

## V. CONCLUSION

Plaintiff seeks the security of the objective technical baseline, not premature access to it.

Plaintiff does not seek the production, processing, or review of this ESI at this time.

Plaintiff requests only that Defendant be ordered to affirmatively sever these specific

data categories from automated deletion protocols and sequester them in non-volatile

cold storage until a formal ESI Protocol is adopted.

For the foregoing reasons, Plaintiff respectfully requests the Court **GRANT** Plaintiff's

Motion for an ESI Preservation Order, compelling Defendant to file a sworn declaration

within fourteen (14) days certifying that the four (4) appropriate categories of

Ephemeral ESI defined herein have been technically sequestered to non-volatile storage.

**DATED**: April 3, 2026
Respectfully submitted,

/s/Stephen Marcus Litchfield
_____

**Stephen Marcus Litchfield**
Plaintiff Pro Se
marclitchfield@gmail.com
14845 SE Monner Rd
Happy Valley, OR 97086
503-307-8953